UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT CITY SURGICAL CENTRE OPERATING COMPANY, LLC**<br><br>V.<br><br>**NEXT Bio-Research Services, LLC d/b/a NEXT Molecular Analytics** | **CIVIL ACTION NO.: 2:20-CV-02369** |

## CLASS ACTION COMPLAINT

Plaintiff, Crescent City Surgical Centre Operating Company, LLC (hereinafter referred to as "Plaintiff"), brings this action on behalf of itself and all others similarly situated, and avers:

### Introduction

1. More than two decades ago, the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (hereinafter referred to as "TCPA") was enacted into law. The law responded to countless complaints by American consumers and businesses about the cost, disruption and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005 (hereinafter referred to as "JFPA"). As amended, the law requires senders to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future junk faxes and explains how to exercise that right.

2. Plaintiff brings this class action to recover damages for and to enjoin massive junk faxing by defendant, NEXT Bio-Research Services, LLC d/b/a NEXT Molecular Analytics

(hereinafter referred to as "Defendant") in direct violation of the TCPA. Upon information and belief, Plaintiff avers that Defendant has blasted hundreds of junk faxes nationwide in direct violation of the TCPA and the regulations promulgated under the act by the Federal Communications Commission (hereinafter referred to as "FCC"). Defendant's violations include, but are not limited to, the facsimile transmission of advertisements to Plaintiff's facsimile telephone number in July, 2020, a copy of which is attached hereto as Exhibit 1.

## Standing and Jurisdiction

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## The Parties

5. *Individual Plaintiff/Class Representative.* Plaintiff is, and at all times relevant hereto was, a limited liability company duly organized and existing under the laws of the State of Louisiana, having a registered agent in Metairie, Louisiana.

6. *Defendant:* Upon information and belief, Defendant is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Virginia, having a registered agent in Richmond, Virginia.

## The JFPA's Prohibition Against Junk Faxing

7. By the early 1990s, advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, require recipients to sort through faxes to separate legitimate fax

communications from junk advertisements and to discard the latter. Congress responded to the problem by passing the TCPA. The TCPA made it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §227(b)(1)(C). The anti-junk fax law was enacted to eradicate "the explosive growth in unsolicited facsimile advertising, or junk fax." H.R. Rep. No. 102-317 (1991).

8. In the decade following the law's enactment, however, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop. FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003). Congress responded by strengthening the law through the JFPA of 2005. The JFPA continues the prohibition against sending unsolicited advertisements via facsimile transmission, and also implemented the additional requirement that all facsimile advertisements include specific opt-out notices. The FCC has defined a "sender" to include any "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(a)(3), (f)(8). The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

9. In 2005, the JFPA for the first time required senders to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements"). 47 U.S.C. §227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 CFR § 64.1200(a)(4)(iii)-(vii). Advertisers must place the notice clearly and conspicuously on the

first page of the fax transmission and include prescribed information that Congress believed essential to enable junk fax recipients to opt-out of future faxes. Compliance with the Opt-Out Notice Requirements is neither difficult nor costly, and these requirements provide important consumer protections bestowed by Congress upon American consumers and businesses. These protections include giving the consumers and businesses the right to stop unwanted junk faxes, requiring the senders to disclose the right and explain how to exercise that right, and providing statutory damages for violations. *Further, the TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser has an established business relationship, must include language on the facsimile which fully complies with the Opt-Out Notice Requirements.* 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

### Defendant's Junk Fax Campaign

10. Defendant claims to offer integrated bio-molecular analysis services ranging from clinical testing to complete support for FDA validation of a customer's specific assay.

11. Upon information and belief, Plaintiff alleges that to advertise their goods and/or services, Defendant has blasted thousands of junk faxes to businesses. Plaintiff further alleges that Defendant has blasted junk faxes without complying with the Opt-Out Notice Requirements, in direct violation of the TCPA, JFPA and the FCC's regulations promulgated thereunder.

12. The junk faxes sent to Plaintiff were part of Defendant's junk fax marketing campaign. Exhibits 1 provides a description of the services provided by Defendant concerning "COVID-19 and Influenza Testing."

13. The fax identified as Exhibit 1 fails to comply with the Opt-Out Notice Requirements. By failing to include a compliant opt-out notice, Defendant is precluded from raising an

established business relationship defense in any litigation arising from that fax advertisement. Defendant is also precluded from raising the defense that Plaintiff solicited any such faxes or gave express prior permission.

14. As a result of Defendant's faxes, Defendant has imposed disruption, annoyance, and cost on Plaintiff. Among other things, these faxes tie up Plaintiff's telephone lines and facsimile machines, misappropriate and convert Plaintiff's fax paper and toner, require Plaintiff to sort through faxes to separate legitimate fax communications from junk fax advertisements and to discard the latter.

15. Failing to provide a compliant opt-out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the regulations promulgated by the FCC. The TPCA statute provides for a private right of action "based on violations of … regulations prescribed under the TCPA." *See* 47 U.S.C. § 227(b)(3)(A). *See also Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for violation of the FCC's implementing regulations.")

**Class Action Allegations**

16. *Statutory Reference.* This action is properly maintainable as a class action under authority of Federal Rule Civil Procedure 23 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect the interest of the class; and (d) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

17. *Class Definition.* The Plaintiff Class (hereinafter referred to as "Plaintiff Class") consists of all persons and entities that are subscribers of telephone numbers to which within four

years of the filing of this Complaint, Defendant sent facsimile transmissions with content that discusses, describes, promotes products and/or services offered by Defendant, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2) or 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

18. *Class Size.* Upon information and belief, Plaintiff avers that the Plaintiff Class numbers are in the hundreds of persons or entities.

19. *Adequacy of Representation.* The Plaintiff Class will be well represented by the class representative and class counsel. Plaintiff appreciates the responsibility of a class representative and understands the nature and significance of the claims made in this case. Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members. Proposed class counsel has the necessary resources, experience and ability to prosecute this case on a class action basis.

20. *Impracticability of Joinder.* Joinder of all Plaintiff Class members is impracticable due to the class' size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with joinder in the litigation on and individual basis.

21. *Common Questions of Law and Fact are Predominant.* Questions of law and fact common to the class predominate over questions affecting only individual class members. Numerous questions may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right of recover following the class judgment.

22. *Common Questions of Fact.* This case presents numerous questions of fact that are common to all class members' claims. Defendant has engaged in a standardized course of conduct

vis-à-vis class members, and Plaintiff's injuries arise out of that conduct. Plaintiff is informed and believes and upon such information and belief avers that the case arises out of a common nucleus of fact because, among other things, all junk faxes advertised Defendant's goods and services; all junk faxes were prepared, developed and sent by Defendant in the same manner for all recipients; and the faxes are the product of an organized fax-blasting campaign targeted to the class.

23. *Common Questions of Law.* The case presents numerous common questions of law, including, but not limited to:

    (1) Whether the faxes at issue advertise the commercial availability or quality of property, goods or services and therefore fall within the ambit of the TCPA, JFPA and the FCC's regulations promulgated thereunder;

    (2) Defendant's mode and method of obtaining the telephone numbers to which the junk faxes were sent and whether the mode and method complied with the requirements of subsection 47 U.S.C. §227 (b)(1)(C)(ii) and the FCC's regulations promulgated thereunder;

    (3) Whether Defendant complied with the Opt-Out Notice Requirements of the TCPA, JFPA and the FCC's regulations promulgated thereunder, and the legal consequences of the failure to comply with those requirements;

    (4) What constitutes a knowing or willful violation of the TCPA within the meaning of section (b)(3);

    (5) Whether Defendant committed knowing or willful violations of the TCPA;

    (6) Whether damages should be increased on account of Defendant's knowing or willful violations of the TCPA and, if so, by what amount; and

7

(7) Whether injunctive relief is warranted to enjoin Defendant from further violations of the TCPA and JFPA.

23. *Appropriate Method for Fair and Efficient Resolution of the Controversy.* A class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

(1) Prosecuting separate actions by individual class members would create a risk inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant;

(2) Because Defendant has acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole;

(3) Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy;

(4) Absent class certification, there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

(5) Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Because the statutory minimum damage is $500 per violation and the TCPA and JFPA does not authorize an award of attorneys' fees to a successful plaintiff, individual action to remedy Defendant's violations of the TCPA would be grossly uneconomical. As a practical matter, the claims of the vast majority of the Plaintiff Class are not likely to be redressed absent class certification.

(6) Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

## Cause of Action for Violation of 47 U.S.C. § 227

24. *Defendant's Violation of the Act.* Within four years of the filing of this Complaint and including, without limitation, through July 2020, Defendant violated the TCPA, JFPA and the FCC's regulations promulgated under the TCPA by sending facsimile advertisements with non compliant out-out notices from telephone facsimile machines, computers, or other devices to telephone facsimile numbers of Plaintiff and members of the Plaintiff Class. Among other things, Defendant violated the TCPA, JFPA and the FCC's regulations because it failed to comply with the mandatory Opt-Out-Notice Requirements set forth in 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(4)(iii)-(vii); thus, causing Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the FCC.

25. Defendant is a sender of the junk faxes alleged in this Complaint because (1) it is the person or entity on whose behalf the facsimile advertisements were sent, and (2) its property, goods and services are advertised or promoted as commercially available in the advertisement.

26. To the extent facsimile advertisements were transmitted by Defendant to consumers who had given consent, had solicited the advertisements, or had an established business relationship with Defendant, the facsimile advertisements are still in violation of the TCPA as they did not contain the compliant opt-out notice required by law, making individual issues of consent, prior express permission, or an established business relationship, legally irrelevant.

27. *Right of Private Action.* Under section (b)(3) of the TCPA, Plaintiff has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress Defendant's violations of the TCPA.

28. *Injunctive Relief.* Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the TCPA. Plaintiff requests that a permanent injunction issue to:

    (1) Prohibit Defendant, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendant, from committing further violations of the TCPA, and thereby prohibiting Defendant, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting with Defendant, from sending any further noncompliant faxed advertisements to any person or entity;

    (2) Require Defendant to deliver to Plaintiff all records of facsimile advertisements since four years of the filing of this Complaint, including all content sent via facsimile, transmission lists, and fax confirmation lists;

    (3) Require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and JFPA, and limiting facsimile advertising activity to personnel who have undergone such training;

    (4) Require Defendant to provide written notice to all persons and entities to whom Defendant sent via facsimile transmission advertisements, warning such persons and entities that the facsimile transmission of noncompliant advertisements is in violation of the TCPA and JFPA and that they should not be led or encouraged in any way by Defendant's facsimile transmissions to fax noncompliant advertisements of their own; and

    (5)    Require Defendant to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this Paragraph 28.

29.    *Damages.* Subsection (b)(3)(B) of the TCPA provides for the recovery of damages in the minimum amount of $500 for each violation of the TCPA by Defendant. In addition, Plaintiff is informed and believes and upon such information and belief avers that Defendant committed its violations willfully or knowingly and that the amount of statutory damages should be trebled, as also authorized by subjection (b)(3) of the TCPA.

## Prayer for Relief

WHEREFORE, Plaintiff and the Plaintiff Class pray for judgment against Defendant:

(1)    Certifying a class consisting of all persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendant sent facsimile transmissions with content that discusses, describes, or promotes products and/or services offered by Defendant, and does not contain the notice required by 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D) and (b)(2)(E), and by 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

(2)    Appointing Plaintiff as representative for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

(3)    Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

(4)    In accordance with subsection (b)(3)(B) of the TCPA and JFPA, for an award of statutory damages in the amount of $500 for each violation of the Act and the trebling of such statutory damages, exclusive of interest costs, according to proof;

(5)    For injunctive relief in accordance with subsection (b)(3)(A) of the TCPA and JFPA, (1) prohibiting Defendant, their employees, agents, representatives, contractors, affiliates and all persons and entities acting in concert with Defendant, from

committing further violations of the TCPA, and thereby prohibiting Defendant, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with Defendant, from sending any further noncompliant faxed advertisements to any person or entity; (2) requiring Defendant to deliver to Plaintiff all records of facsimile advertisements since four years of the filing of this Complaint, including all content sent via facsimile, transmission lists, and fax confirmation lists; (3) requiring Defendant to adopt ongoing educational, training and monitoring activity to personnel who have undergone such training; (4) requiring Defendant to provide written notice to all persons and entities to whom Defendant sent via facsimile transmission noncompliant advertisements, informing such persons and entities that Defendant's facsimile transmission of advertisements mislead recipients to fax advertisements of their own; and (5) requiring Defendant to conspicuously place on the homepage of their respective websites the warnings contained in (4) of this subparagraph 5;

(6) Ordering payment of costs of litigation, including without limitation costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

(7) For pre-judgment interest;

(8) For costs of suit herein from Defendant;

(9) For such other and further relief as the Court shall deem just and proper.

Respectfully Submitted:

*/s/ Ryan P. Monsour*

_____
PRESTON L. HAYES (#29898)
RYAN P. MONSOUR (#33286)
BARRY W. SARTIN (#34075)
*HMS Law Firm*
3850 N. Causeway Blvd.
Suite 590
Telephone: (504) 356-0110
Facsimile: (504) 356-0112
*Counsel for Plaintiff*

**WAIVER OF SERVICE WILL BE SENT TO DEFENDANT**